JOSEPH WANGLER, Respondent, *v.* FRANCIS SWIFT, Appellant.

In 1870, S. & K., at the request of J., who was constructing a bridge, and upon his promise to pay therefor, furnished materials and performed labor upon the bridge, mostly for temporary work necessary for the permanent structure. In November, 1871, defendant, for a good consideration, agreed with the administratrix of J. to pay S. & K. such sum as should appear due to them from J. for such work and material, " under a certificate from the engineer in charge of said work." In an action upon the agreement *held*, that it called for a certificate from the engineer in charge of the work at the time the materials were furnished and labor performed; also that a procurement and presentation of the certificate or notice to defendant of its contents, and a demand of the

sum certified to be due, were conditions precedent to plaintiff's right of recovery.

A party cannot sustain on appeal a verdict in his favor, upon a ground taken from him by the trial court.

(Argued June 26, 1882 ; decided October 10, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made at the April term, 1881, which affirmed a judgment in favor of plaintiff, entered upon a verdict directed by the trial court.

The nature of the action and the material facts are stated in the opinion.

*William Hildreth Field* for appellant. Until certificate of engineer in charge of the work had been procured and notice thereof given to defendant, any suit would be premature. (*Hyse* v. *Walafield,* 6 M. & W. 451.)

*Julien T. Davies* for respondent. Plaintiff could maintain this action upon the previous notice and demand actually given and made, or without previous notice that the engineer in charge had certified to the claim of Sherman & Kiyler. (*Niermeyer* v. *Brooks,* 44 Ill. 77 ; *Douglas* v. *Howland,* 24 Wend. 48–53 ; *Genesee College* v. *Dodge,* 26 N. Y. 213 ; *Hyse* v. *Walafield,* 6 M. & W. 451 ; *Heebner* v. *Townsend,* 8 Abb. 234 ; *Johnson* v. *Ackerson,* 40 How. 222 ; *Halleck* v. *Moss,* 22 Cal. 266 ; *Lamphere* v. *Cowen,* 42 Vt. 175 ; *Watson* v. *Walker,* 23 N. H. 471 ; *O'Connor* v. *Dingley,* 26 Cal. 11 ; *Locklin* v. *Moore,* 57 N. Y. 360.) Defendant is estopped from insisting on previous specific notice of Faron's certificate. (*Prentice* v. *Knick. L. Ins. Co.,* 77 N. Y. 483 ; *Goodwin* v. *Mass. Mut. L. Ins. Co.,* 73 id. 480 ; *Gratton* v. *Mut. L. Ins. Co.,* 21 Alb. L. J. 289 ; *Ripley* v. *McClure,* 4 Exch. 345.) If the covenant of Swift requires the certificate of the engineer in charge when Sherman & Kiyler did their work, plaintiff has the right to claim that it has been conclusively decided upon the trial of this case that

such a certificate was obtained by him. (*Koheler* v. *Adler*, 78 N. Y. 287.)

DANFORTH, J. According to the case made by the original complaint, one Jackson was engaged during September and October, 1870, in the construction of a bridge (for the city of Brooklyn) over Bushwick creek, and induced Sherman and Kiyler to furnish materials and perform labor thereon during those months to the amount of $2,584.39, which he agreed to pay. Without doing so he died, and Mary Jackson was appointed administratrix of his estate.

Thereafter, on the 23d of November, 1871, for a satisfactory consideration to him paid, the defendant agreed with her that he would pay Sherman and Kiyler such sum as should appear due to them from her intestate "for work and material done and furnished by them in the construction of said bridge, under a certificate from the engineer in charge of said work * * * and hold her harmless from any claim of the said Sherman and Kiyler, which should be justified by the certificate of said engineer;" they assigned their claim against the estate of Jackson to the plaintiff. In September and October, 1870, one John McCloskey was the engineer in charge of the construction of the bridge, and he, in writing, certified the above sum with interest to be due Sherman and Kiyler from said estate, by reason of such work and material. The certificate of McCloskey was before suit exhibited to the defendant by the plaintiff, and payment of the amount therein certified to be due has, since its presentation, been demanded by the plaintiff of the defendant, but he refuses to pay.

The defendant by answer denied, among other things, that McCloskey was the engineer in charge of the construction of the bridge at the time stated, and upon this issue much evidence was given upon the trial.

Before its conclusion, however, the trial judge ruled: that the certificate of the engineer was a condition precedent to the plaintiff's right of recovery; that McCloskey was not engineer at any time, and that what he did amounted to nothing, so far

as this condition precedent is concerned. Before this ruling was made, it had appeared that one Faron was in charge of the bridge from September, 1871, to a time subsequent to and including the date of the agreèment by the defendant, and from what passed between the plaintiff's counsel and the court, it would seem that the judge held that the certificate of the engineer then in charge of the bridge would be required. Upon the plaintiff's application, and against the objection and exception of the defendant, he was permitted to amend his complaint by alleging it. The plaintiff then put in evidence, against the defendant's objection and exception, Faron's certificate, which in form was no doubt a compliance with the terms of the defendant's undertaking, and stated the sum above named to be due from the estate of Jackson. It did not appear that it had been exhibited to the defendant before the trial, or that he had received any notice of it whatever, and upon these grounds the defendant moved to dismiss the complaint. The court denied the motion and directed a verdict for the plaintiff.

Two questions arise : *First,* Did the agreement require a certificate from the engineer in charge of the bridge during September and October, 1870, the time the work and material were furnished by Sherman and Kiyler? *Second,* If not, was the plaintiff's cause of action complete without notice to the defendant of Faron's certificate, and a demand under it of the sum ascertained to be due?

*First,* We have no evidence of the agreement between the parties, except as it is set out in the pleadings, and from that our conclusion accords with the theory on which the action was brought and which led to the averment that McCloskey, the engineer in charge of the work in September and October, gave the certificate and so enabled the plaintiff to allege performance of the condition precedent on which the defendant's liability depended.

Jackson was dead. The defendant had no knowledge of the work done or the material furnished; the sum due was an unliquidated and uncertain amount to be ascertained by reference to matters known to Sherman and Kiyler, the other party

to the agreement.  But it is obvious that Swift was not willing to accept a statement made by them, and before his obligation attached, the certificate of a third person was required. It must precede any recovery of the money due under the contract.  Its procurement, therefore, was a necessary part of the plaintiff's duty, if he would charge the defendant.  It was intended to exhibit the plaintiff's claim and establish it.  We may reasonably infer, therefore, that the parties had in mind the engineer who prepared the plan and specifications, who knew what was to be done under the agreement of Sherman and Kiyler with Jackson, and by the latter under his agreement with the city, which was constructing the bridge ; who knew also what had been done, and who, knowing of the delivery of the materials and the work as it went on from day to day, was the person most likely, if not the only one, who was capable of answering from his own knowledge the inquiries called for by the agreement.

The bill included piles, excavation, bailing and drawing off water, lumber and plank for scaffold, labor in building and re-constructing it, driving piles, taking up and replacing the same.  Much of the materials and work was evidently of a temporary nature, necessary for the permanent structure which was to follow it, and of a character to be estimated only by a daily eye-witness, or one whose duty required his actual supervision of the work.

The defendant agreed to be bound by the determination of such a person, because from his knowledge the necessary information could be drawn.  It is impossible to suppose that one having no personal knowledge of the work, or means of acquiring it, and whose connection with the structure began long after the services were rendered and material furnished, could have been selected by a person wholly ignorant as to these things, to determine, not only the quantity of each, but the amount due therefor.

The theory of the complaint accords with this view, and is, we think, the correct one.  It agrees with the nature of the contract and the object which the parties had in mind in calling for the certificate.  This conclusion leads to a new trial.

Circumstances not now in evidence may, however, appear upon another trial, if one shall be had, and affect the construction we give to this agreement. It seems best, therefore, to consider the second question; and upon this, too, we think the complaint is well drawn, and should have been adhered to. As the certificate was a necessary part of the plaintiff's case, and to be procured by him, as without it the defendant could not know for what, or how much he was to pay, there could be no default on his part until informed of and shown a certificate, and a demand made thereon by the plaintiff. Until then he could make no payment. His agreement is to pay Sherman & Kiyler the sum which should appear due, " under " the certificate, " all the engineer should certify they were entitled to." This fact, when ascertained, would be known to the plaintiff, but not the defendant, and he could not be liable to an action until the certificate was submitted to him, or otherwise brought to his attention, and a demand made under it. Until then his contract was not absolute but conditional. It was dependent upon the act of the other party, who was to furnish the information to enable him to perform his promise.

The case comes within the principle that notice is necessary where the thing lies more properly in the cognizance of the plaintiff than of the defendant (Vin. Abr., Notice, A, 2, Pt. 12, or as stated in *Vyse* v. *Wakefield* (6 Mees. & Wels. 451) when "it is to do a thing which lies within the peculiar knowledge of the opposite party, then notice ought to be given to him." Whether we take this literally or as interpreted in *Lamphere* v. *Cowen* (42 Vt. 182), to mean to do a thing " in an event which lies," etc., it applies here.

The certificate is the fact upon which the obligation of payment depends, and is wholly within the control of, and for the plaintiff's advantage, and so the case is also within the last clause of the rule stated by Chitty, which makes notice necessary where there is an express stipulation in the contract, *or* where it is requisite from the nature thereof that demand of performance be made.

The very nature, if not the form, of the defendant's covenant

requires the performance of such conditions. There was no precedent debt or duty upon the defendant. He undertook to pay, not the sum actually due from the estate of Jackson, but what should appear to be due under the certificate. . The certificate then is parcel of the contract as much as his promise. Performance by him necessarily pre-supposes that it shall be procured prior thereto by the other party.

His proposition implied correlative right and privilege, not only to see and examine the certificate, but to pay the amount certified, without suit. These rights could not be available until the ignorance under which he labored as to the sum due from Jackson was dispelled. The debt was the debt of Jackson, and the legal effect of the undertaking to pay that debt is "procure the certificate and let me know its contents and I will pay the sum justified by it." Notice was, therefore, a condition precedent to the defendant's liability, the same as if such stipulation had been expressed in the contract. It follows that without proof of the proper certificate, and notice and demand based upon it, and a refusal to pay according to its terms, there could be no breach and consequently no right of action. The cases cited by the respondent upon this point do not hold the contrary. In *Locklin* v. *Moore* (57 N. Y. 360), a specific sum was due for goods sold by plaintiff to defendant; in *Lamphere* v. *Cowen*, 42 Vt. 182, "the defendant knew of the existence of the debt, the amount, and to whom due."

The learned counsel for the respondent has, since the oral argument of this case, submitted a supplemental brief, by which he claims the benefit of McCloskey's certificate, in case it should be held that one was required from the engineer in charge of the work in September and October, 1870. It is a sufficient answer to this position that the trial court excluded it and put its decision upon another and inconsistent ground. But it should also be added that whether McCloskey or Meserole, of whom mention was made in evidence, or some other person was the engineer in charge in September and October, 1870, is a question of fact, and may very well go before a jury. It is enough now to say that the plaintiff cannot sustain the

verdict upon a ground taken from him by the trial judge. The ruling then made became the law of the case (*Elsey* v. *Metcalf*, 1 Denio, 323; *Stanton* v. *Wetherwax*, 16 Barb. 259; *Rogers* v. *Murray*, 3 Bosw. 357; *Currie* v. *Cowles*, 6 id. 460), and we cannot assume that the trial judge departed from it. Had the ruling been otherwise, it may well be that the defendant might have prevailed by opposing evidence, and upon grounds which do not now appear.

As the decisions of the trial court turned upon a different construction of the agreement, and were inconsistent with the views above presented, we think the judgment should be reversed, and a new trial granted, with costs to abide the event.

All concur, except Tracy, J., absent.

Judgment reversed.