HORN & HARDART COMPANY, Plaintiff, *v.* 115 EAST 14TH STREET COMPANY, INC., Appellant-Respondent, and THIRD HOLDING CORPORATION, Respondent-Appellant.

First Department, February 26, 1943.

*William Dean Embree* of counsel (*Samuel Ross Ballin,* attorney), for defendant-appellant-respondent.

*Charles H. Tuttle* of counsel (*Charles Fredericks,* attorney), for defendant-respondent-appellant.

CALLAHAN, J. The judgment for specific performance previously entered herein (*Horn & Hardart Co.* v. *115 East 14th Street Co.,* 7 N. Y. S. 2d 688; affd. 257 App. Div. 813; affd. 281 N. Y. 802) provided for the appointment of a referee to ascertain the value of the property concerning which the action was brought. This valuation was required under the terms of the lease, which provided for a renewal term of twenty-one years at a net rent which was to be five per centum of the appraised value of the lots of land demised, excluding buildings, as of April 30, 1937, " at their full and fair worth or price at private sale." In no event was the renewal rent to be less than $10,000 per annum. A referee was appointed who fixed $400,000 as the value of said land, and the net renewal rent at $20,000 per annum. Special Term confirmed the referee's report and directed that the tenant pay interest on a minimum rent of $10,000 per annum from May 1, 1937, giving credit for a payment of $50,000 made on account of rent on January 24, 1941. Both sides appeal from the valuation so fixed, as well as from the provisions of the order confirming the referee's report in so far as it fixes interest.

The property to be valued was an " L " shaped plot with two frontages, one of 50.2 feet on the north side of Fourteenth street, and the other of 28.1 feet on the west side of Irving place. It abutted on the west and north thereof a lot approximately 25′ x 100′ on the northwest corner of the streets mentioned, which corner was in other ownership. The area to be valued consisted of what would ordinarily be considered two rectangular plots; one of approximately 50′ frontage by 103′ in depth, facing Fourteenth street, and the other of approximately 28′ frontage by 75′ in depth, facing Irving place. A majority of the appraisers who testified for the respective parties herein so regarded this area.

The referee, in computing value, followed a method conceived by a single appraiser called by the landlord, who regarded the area as consisting of a plot with 50′ frontage and 131′ depth, facing Fourteenth street, and a second plot, called an " entrance " lot, on Irving place of 28′ frontage by 25′ depth. This method was used so as to give Fourteenth street values to

the plot for its full 131 feet of depth. Further by applying a rule which holds that the front 25 feet of a lot which is 75 feet in depth is equal in value to the rear 50 feet thereof, Fourteenth street values were given to the Irving place " entrance " lot. Not only did the referee use the method indicated, but, after adding the customary ten per cent for plottage, he added an additional premium for " conjunctive use." He also gave a fifteen per cent increase to the lot adjoining the corner lot for "key influence," whereas all of the experts, other than the one above referred to, applied only ten per cent for " key influence."

The referee determined that the full and fair worth or price at private sale of a unit lot of 25′ x 100′ on Fourteenth street was $125,000. By application of the method of computation above referred to, he arrived at his valuation of $400,000.

We find from the evidence that the unit value of $125,000 for a Fourteenth street lot was, to say the least, a most liberal one. In any event the valuation arrived at by the referee for the entire plot was unjustified. It was considerably higher than that indicated by the assessed valuation of the land and by the prices paid for this very property at private sales in 1927 and 1929, at times when market conditions generally were more favorable. But we would be reluctant to question the unit value used by the referee, if the total value fixed by him was in conformity with the evidence. We find, however, that if a unit value of $125,000 was to be used, then the customary method suggested by all but one of the appraisers of treating this area as two plots — one of 50′ x 103′ facing Fourteenth street, and the other 28′ x 75′, facing Irving place — should have been followed in making the computation of total value. Upon the weight of the evidence the allowance for " key influence " should have been limited to ten per cent, and any premium for " conjunctive use " should have been omitted since a premium for plottage of ten per cent over all was awarded. The Irving place lot should be assigned a value of forty per cent of the Fourteenth street property, in conformity with the scale applied by most of the experts.

Recomputing the valuation of the plot on this basis, we find that on the unit value of $125,000 fixed by the referee, the total area would be valued at $346,484.77. Any valuation higher than this was unwarranted by the evidence. Using a figure of $346,500 for the purpose of easier computation of net renewal rent, we fix $17,325 as the annual rent for the renewal term involved.

The provision for interest made by Special Term on the basis of a minimum rent of $10,000 pending appraisal of the property seems equitable and proper. (*Fraser* v. *Carton,* 140 Misc. 881, affd. 235 App. Div. 651.)

The order so far as appealed from should be modified by reducing the valuation of the land in question to $346,500, and the net renewal rent to $17,325 per annum, and, as so modified, affirmed, with costs and disbursements to the appellant.

MARTIN, P. J., and TOWNLEY, J., concur; GLENNON and COHN, JJ., dissent and vote to affirm.

Order, so far as appealed from, modified by reducing the value of the land in question to $346,500, and the net renewal rent to $17,325 per annum, and as so modified affirmed, with costs and disbursements to the appellant. Settle order no notice.